## 2935. NUSSBAUM *v.* WATERMAN & CO.

1. Where a statutory claim is filed to property levied on under an execution issued upon the foreclosure of a chattel mortgage, and it appears that the defendant in the mortgage fi. fa. was in possession of the property at the date of the levy, and it nowise appears that the claimant has any right or title to the property, it is error for the court, on motion of the claimant, to dismiss the levy on the ground that the description of the property as contained in the mortgage is not sufficiently definite or specific.

2. "In providing that a mortgage shall specify the property on which it is to take effect, the law does not require such a description as will serve to identify the property without the aid of parol evidence."

3. The words of description in a mortgage may be sufficient to create a lien on the property, and yet insufficient of themselves to impart notice (through the recording of the mortgage) of the lien which they create.

4. In determining what property the words of a mortgage are used to describe, the. maxim "Falsa demonstratio non nocet" may be applied; and incorrect words of description may be disregarded, provided that the description remaining after disregarding the false terms is sufficient.

DECIDED FEBRUARY 22, 1911.

Levy and claim; from city court of Bainbridge—Judge Cranford. September 14, 1910.

*T. S. Hawes, William H. Krause,* for plaintiff.

*John R. Wilson,* contra.

POWELL, J. On February 4, 1908, Barco, to secure an indebtedness to Mrs. Nussbaum, executed to her a mortgage on certain personalty described therein as follows: "One bay horse named Dan, one named Freddy G., one cream mare named Annie, and one horse named Mack, and seven other horses used in livery business, two carriages, one hack, one hearse, six good buggies, and all other vehicles now used in livery business on Clay street." The mortgage was duly recorded. In April, 1908, it was foreclosed, and the mortgage fi. fa. was levied; the description in the entry of levy corresponding in substance with that contained in the mortgage. The officer, in the entry of levy, recited that the property at the time of the levy was in the possession of Barco, at his livery stable, on Clay street. Waterman & Co. filed a statutory claim to "two certain sorrel mares about five years old" included in the levy, and from this the case before us arises. At the trial only two witnesses testified, the sheriff and Barco. The sheriff merely substantiated the recitals of the entry of levy. Barco testified that the two mares levied on under Mrs. Nussbaum's mortgage fi. fa. and claimed by Waterman & Co. were two of the mares included in the mortgage, were his property, and were in his possession at the time of the giving of the mortgage, and had been used by him in his livery business on Clay street from that time down to the date of the levy; that he had from "12 to 15 horses in the livery business all the time before the levy." The mortgage from Barco to Mrs. Nussbaum was then offered in evidence, but, over objection on the ground that it did not contain any definite description of the prop-

erty levied on, was excluded, it being conceded that the two mares were included in the mortgage only under the description "seven other horses used in livery business," as it appears in the general context stated above. The mortgage being excluded, the court dismissed the levy.

We think the court erred. It is recited in the entry of levy that the defendant in fi. fa. was in possession of the property at the date of the levy. This threw the burden of proof upon the claimants. It is stated in the brief of counsel for the defendants in error (the claimants) that the plaintiff in fi. fa., notwithstanding this recital in the entry, assumed the burden of proof. This does not appear affirmatively from the record; but it may be that there is enough in the record for us to infer this fact; anyway, we will treat the case as if the burden of proof were upon the plaintiff. The plaintiff proved by undisputed testimony that the mares in question were two of the animals described by the parties to the mortgage as "seven other horses used in livery business," etc., and that the mortgagor owned the mares at the date of the mortgage and at the date of the levy. Even if title in the mortgagor had not been thus directly proved, the fact that the mortgagor was in possession of the property would have been ample evidence of his title, until it were shown that he did not in fact own them. There was no evidence whatever that the claimants had any right, title, or interest in the property. The uncontradicted evidence in the case places them in the juridic position of mere voluntary interlopers; for if the defendant in fi. fa. owned the property, as he said he did, or as it is to be presumed that he did from the fact of his unexplained and unqualified possession, then, of course, the claimants did not own it. If Barco, who owns the property, does not object to its being sold under this mortgage foreclosure, why should Waterman & Co., who show no semblance of right or title to it, make any objection? We stress this feature of the case because it discloses the fallacy of the contention of counsel for the defendants in error when he asserts (referring to the description in the mortgage): "Between the original parties the description may have been sufficient, but as to third parties it was entirely too vague and indefinite and was not sufficient to put them on notice." Ah! There's the point! If it had been disclosed that Waterman & Co. had bought the property from Barco, or had otherwise been prejudiced by

lack of notice of the existence of the mortgage, by reason of the meager description, they would be in a position to raise the point. So far as it here appears, they are merely busying themselves in a matter with which they have no concern.

"In providing that a mortgage .. . shall specify the property on which it is to take effect, the law does not require such a description as will serve to identify the property without the aid of parol evidence." *Thomas Furniture Co.* v. *T. & C. Co.,* 120 *Ga.* 879 (48 S. E. 333). The language used in a mortgage to describe the property may be sufficient as between the parties to the paper and as between the mortgagee and others who have such knowledge of the particulars of the transaction as reasonably to charge them with notice of the lien, and yet may be such as to prove legally insufficient if the mortgagee seeks to assert the lien of his mortgage against a third person who had in good faith and for value, and without actual notice of the lien, acquired through or from the mortgagor some right or title to the property, and the mortgagee relies upon registration of the instrument as imparting constructive notice. Or, to state it slightly differently, but somewhat more succinctly, the words of description in a mortgage may be sufficient to create a lien, and yet be insufficient of themselves to impart notice of the lien which they create. Hence, whether the description in a mortgage is sufficient or not very frequently depends upon whether the lien is being asserted against the mortgagor or some person who has notice, or whether it is being asserted against some innocent purchaser for value who has no notice other than such as the record of the instrument may have imparted. For example, in *Stewart* v. *Jaques,* 77 *Ga.* 365 (3 S. E. 283, 4 Am. St. R. 86), the description in the mortgage was: "One bay mare, two mare mules, one horse mule." The claimant purchased from the mortgagor a black mare mule and had no notice of the lien except by the record of the mortgage. The court held the description insufficient to impart notice through the record; but it is significant that the court said: "As between the mortgagor and the mortgagee, parol evidence might be admitted to show the property to be the same as that mortgaged; but it is not admissible as against a bona fide purchaser. He stands upon the notice which the record of the mortgage charges him with. The parol evidence is no notice to him." The effect of the decision in the case of *Farkas* v. *Duncan,*

94 *Ga.* 27 (20 S. E. 267), was to hold that the description, "one bay mare mule," might be sufficient even as against an innocent third person; for, while the full description as given in the mortgage was "one bay mare mule named Katie," it appeared that the mare mule in question was not named Katie, but was named Dilsie, and the name was therefore disregarded, under the principle embodied in the maxim, "Falsa demonstratio non nocet." Likewise, in *Lamar* v. *Coleman*, 88 *Ga.* 417 (14 S. E. 608), a description, "one horizontal-mounted, six horse-power Farquhar engine," was held sufficient, though the engine in question was a five horse-power engine, and not a six horse-power engine, as stated.

The language used in the present mortgage evidences, with more or less certainty, an intention to mortgage the horses and vehicles used in a designated livery business. It appears, from the evidence, that there were some 12 to 15 horses owned by the defendant and used in that business. The mortgage specifically names only 4 of these horses and speaks of the remainder as being "seven other horses," adding the general words, "used in livery business;" the livery business itself being further described in another portion of the mortgage. Thus, it appears that, while the "other horses" used in the livery business were more than seven—were at least eight, still any one reading the mortgage is very likely to gain the mental impression that the intention of the mortgage, as gained from the entire context, is to create a lien on all of the horses and vehicles used in the business referred to. If necessary to effectuate the intent of the parties, the court may, under the maxim, "Falsa demonstratio non nocet," disregard the descriptive term "seven." See Broom's Legal Maxims (7th ed.), 470. Thus, where a testator bequeathed an annuity of 21 pounds per annum purchased of G., and it appeared that he had no annuity of that amount, but had an annuity of 46 pounds purchased of G., it was held that the annuity of 46 pounds passed under the description. *Purchase* v. *Shallis*, 14 Jur. 403.

The general sufficiency of the description before us must be upheld. If, on another trial, and upon further development of the facts, it appears that the claimants have derived through or from the mortgagor, since the execution of the mortgage, some title, or right in the nature of title, under such circumstances as to make them purchasers for value, it will be for the jury to say whether

the language used in the mortgage (and therefore appearing on the record) was adequate to impart to any one, dealing with the mortgagor as the claimants did, notice of the lien on these particular animals, under the facts as they may appear. Whether the record gives such notice depends not solely on the language appearing in the mortgage, but is determined in accordance with what a person of ordinary business prudence would have found out from pursuing such lines of inquiry as the data given in the mortgage would naturally suggest to his mind; and, additionally, any further information actually possessed by the claimants at the time of their transaction, which would have led an ordinary man to believe that he was dealing as to the mortgaged property, or would ordinarily have led him to further inquiry, may be taken into consideration in determining whether they had notice of the lien, or were legally chargeable with notice. But, as has been previously said, until the claimants show that they have some right about to be affected, they are not in a position to question the sufficiency of the description.

*Judgment reversed.*