[redacted]

**HARDWICK BANK & TRUST CO. v. McFARLAND, Trustee in Bankruptcy.**

**No. 5840.**

Circuit Court of Appeals, Fifth Circuit.

Oct. 13, 1930.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Sam P. Maddox, of Dalton, Ga., and Arthur G. Powell, of Atlanta, Ga. (Sam P. Maddox, W. M. Sapp, and S. R. Maddox, all of Dalton, Ga., and John D. Little, Arthur G. Powell, Charles S. Reid, and Max F. Goldstein, all of Atlanta, Ga., on the brief), for appellant.

Oliver R. Hardin, of Dalton, Ga. (Oliver R. Hardin and J. A. McFarland, both of Dalton, Ga., on the brief), for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The appellant, herein called the bank, asserted a claim against merchandise of the bankrupt which came to the possession of the appellee, the trustee in bankruptcy. That claim was based upon a written bill of sale, dated December 30, 1927, executed by the bankrupt, and recorded prior to the filing of the bankruptcy petition. By that instrument

808

the bankrupt transferred and assigned to the bank:

"My entire stock of merchandise located on the East side of Hamilton street in the City of Dalton, County of Whitfield and State of Georgia, situated in the brick store house belonging to the First National Bank at the corner of Hamilton and Cuyler streets."

That instrument recited that it was given to secure a described promissory note for $9,500, or "any renewal or renewals thereof or any other obligation to said payee, either primary, secondary or contingent, due or to become due, now existing or that hereafter may be contracted"; and contained the following provisions:

"This bill of sale is to attach to goods bought and detach from goods sold and attach to cash or the accounts representing such sale. This bill of sale is to be shifting in its nature. The title to said property is to vest absolutely and fully in said payee, the undersigned agreeing not to trade, sell or remove the same from the place where now located or out of Whitfield County, Georgia, without the written consent of the payee."

On March 19, 1928, a fire destroyed part of the stock of merchandise. The bankrupt sold part of the salvaged goods, and, with the consent of the bank, removed the rest to a nearby warehouse and then to another store, and continued to carry on his business, selling from his stock and replenishing it with purchases of additional goods. He opened three retail stores, supplying those stores from the stock in the main store. The bank continued to advance to the bankrupt money which was used by him in buying merchandise. This was done with the understanding between the bankrupt and the bank that the above-mentioned instrument was to cover the bankrupt's stock of merchandise not only while it was in the store named in the bill of sale, but while it, in whole or in part, was in another place or places, including the retail stores. The above-mentioned claim was disallowed, on the ground that the bill of sale did not cover merchandise located elsewhere than in the store mentioned in the description of the transferred stock of merchandise.

The provision of the Civil Code of Georgia 1910, § 3256, that a mortgage "may embrace all property in possession, or to which the mortgagor has the right of possession at the time, or may cover a stock of goods, or other things in bulk, but changing in specifics, in which case the lien is lost on all articles disposed of by the mortgagor up to the time of foreclosure, and attaches to the purchases made to supply their place," applies to a bill of sale of a stock of merchandise given to secure a debt. Merchants' & Mechanics' Bank v. Beard, 162 Ga. 446, 134 S. E. 107. The effect of the bill of sale in question was to transfer as security for existing and future debts of the transferor to the transferee movable property, a stock of merchandise, which was subject to be constantly changed by sales therefrom and additions thereto of other goods. It is not doubted that, if consistent with the indicated intention of the parties, such an instrument may continue to be effective after the removal of the transferred property from the place where it was located when the transfer took effect. Instead of the instrument now in question indicating that the parties intended it to cease to be effective upon the described stock of merchandise being removed from the place of its location when the instrument was executed, the above-quoted provision as to removing the property from the place where it was located when the transfer took effect shows that the parties contemplated that the instrument could remain effective after such removal. The provision as to the manner of evidencing the bank's consent to such removal was one for its benefit, and the debtor's compliance with the requirement that he obtain the bank's written consent could be waived by the latter. The evidence showed that the bank waived compliance with that requirement by conduct plainly indicating that it did not elect to exact such compliance. The nature of the transferred property was such that it did not lose its identity as a stock of merchandise by removal from one place to another or by changes in what constituted it, resulting from the stock being depleted and renewed. The record of the bill of sale gave notice to third parties having subsequent dealings with the bankrupt that his stock of merchandise might continue to stand as security for his debts to the bank after the removal of the stock from the store in which it was located when the bill of sale took effect. That instrument's description of the transferred stock of merchandise was such as to put third persons dealing with the bankrupt upon inquiry as to a stock of merchandise possessed by the bankrupt being or not being the same stock which was so transferred, though the place of its location had ceased to be the one mentioned in that instrument. A. S. Thomas Furniture Co. v. T. & C. Furniture Co., 120 Ga. 879, 48 S. E. 333. The evidence as to

the transactions between the bank and the bankrupt shows that they intended the bill of sale to remain effective after the removal of the stock of merchandise from the place where it was located when the transfer took effect. To give effect to their intention in that regard is not inconsistent with the terms of the bill of sale. This being so, and the description of the transferred property sufficiently identifying it, the bill of sale did not cease to be effective as a result of the change of location of the transferred stock of merchandise. The just-stated conclusion is not inconsistent with the decision in the case of Robinson, Norton & Co. v. Norton, 108 Ga. 562, 34 S. E. 147, which was invoked by counsel for the appellee. The question in that case was whether a mortgage of a stock of groceries described as being located in a designated store covered certain groceries which, when they were destroyed by fire, were located in a building other than the store mentioned. The evidence showed that the goods destroyed by fire were never in the store mentioned except when they were carried through it before being stored in the other building, and that they were not intended to be part of the stock in the store unless added thereto after their removal from the building in which they were kept. The court found from the evidence that the mortgagor did not intend the mortgage to cover any goods, purchased after the execution of the mortgage, while they were stored in the other building, and before they were added to the stock in the store mentioned. The evidence in the instant case showed that the goods in question belonged to the bankrupt's stock of merchandise transferred by the bill of sale, which, in accordance with the intention of the parties to that instrument, and consistently with its terms, continued to stand as security for the bankrupt's debts to the bank after that stock of merchandise was moved from the place where it was located when the bill of sale took effect. We conclude that the merchandise in question was covered by the bill of sale. It follows that the ruling complained of was erroneous.

It may be mentioned that no evidence showed that prior to the bankruptcy any creditor of the bankrupt other than the bank acquired a title to or a lien on the bankrupt's stock of merchandise, or that the bill of sale operated as a voidable preference. The appellee acquired no right superior to that conferred on the bank by the bill of sale. Martin v. Commercial National Bank, 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441.

Because of the above-mentioned error, the order or decree appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.